1  MICHAEL N. FEUER (SBN 111529)
   *mike.feuer@lacity.org*
2  CITY ATTORNEY
   CITY OF LOS ANGELES
3  200 N. Main St., Rm. 800
   Los Angeles, CA 90012
4  Telephone: (213) 978-8100

5  ELAINE T. BYSZEWSKI (SBN 222304)
   *elaine@hbsslaw.com*
6  LEE M. GORDON (SBN 174168)
   *lee@hbsslaw.com*
7  HAGENS BERMAN SOBOL SHAPIRO LLP
   301 N. Lake Ave., Ste. 203
8  Pasadena, CA 91101
   Telephone: (213) 330-7150
9
   [Additional Counsel Listed on Signature Page]
10
   *Attorneys for Plaintiff the City of Los Angeles*
11

12            **UNITED STATES DISTRICT COURT**

13            **CENTRAL DISTRICT OF CALIFORNIA**

14

| | |
|---|---|
| CITY OF LOS ANGELES, a municipal corporation,<br><br>                          Plaintiff,<br><br>        v.<br><br>BANK OF AMERICA CORPORATION; BANK OF AMERICA, N.A.; COUNTRYWIDE FINANCIAL CORPORATION; COUNTRYWIDE HOME LOANS; and COUNTRYWIDE BANK, FSB,<br><br>                          Defendants. | No. 2:13-cv-09046-PA(AGRx)<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>Date:      April 21, 2014<br>Time:      1:30 p.m.<br>Courtroom:      15<br>Judge:    Hon. Percy Anderson<br><br>Complaint filed: December 6, 2013 |

15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................. 1

II.    LEGAL STANDARD ........................................................................... 2

III.   ARGUMENT ....................................................................................... 3

    A.   The City Satisfies the Requirements of Article III
       Standing................................................................................... 3

        1.   The City Alleges Injury-in-Fact. .................................... 4

        2.   The City Shows Injury Fairly Traceable to BoA's
            Conduct. ......................................................................... 7

    B.   The City's FHA Cause of Action is Timely Because the
       Continuing Violations Doctrine Applies. .............................. 12

    C.   The Complaint States a Claim Under FHA. .......................... 17

        1.   The City Properly States a Claim for Disparate
            Impact. .......................................................................... 17

            a.   FHA prohibits disparate impact
               discrimination. .................................................... 17

            b.   The City adequately alleges disparate
               impact. ................................................................ 18

            c.   The City adequately alleges a causal
               connection............................................................ 19

        2.   The City Properly States a Claim for Intentional
            Discrimination. ............................................................. 20

        3.   The City's Redlining Allegations Are Sufficient. ....... 22

    D.   The City Properly States a Claim for Restitution. ................ 23

IV.   CONCLUSION ................................................................................... 25

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
Case No.: 2:13cv-09046-PA(AGRx)

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Adkins v. Morgan Stanley*,
    No. 12 CV 7667(HB), 2013 WL 3835198 (S.D.N.Y. Jul. 25, 2013) ................ 10

*Affordable Hous. Dev. Corp. v. City of Fresno*,
    433 F.3d 1182 (9th Cir. 2006) ........................................................................ 17

*Alpha III, Inc. v. City of San Diego*,
    187 F. App'x 709 (9th Cir. 2006) .................................................................... 15

*Augustine v. United States*,
    704 F.2d 1074 (9th Cir. 1983) ...................................................................... 2, 1

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...................................................................................... 3, 4

*Ben & Jerry's Franchising, Inc. v. Porghavami*,
    418 F. App'x 607 (9th Cir. 2011) .................................................................... 24

*City of Baltimore* (*Mayor and City Council of Baltimore v. Wells*
    *Fargo Bank, N.A.*),
    No. CIV JFM-08-62, 2011 WL 1557759 (D. Md. Apr. 22, 2011) ............... 6, 11

*City of Birmingham v. Citigroup Inc.*,
    No. CV-09-BE-467-S, 2009 WL 8652915
    (N.D. Ala. Aug. 19, 2009) ....................................................................... 5, 7, 11

*City of Boston v. Smith & Wesson Corp.*,
    No. 199902590, 2000 WL 1473568 (Mass. Super., July 13, 2000) .............. 25, 2

*City of Cleveland* (*White v. Smith & Wesson*),
    97 F. Supp. 2d 816 (N.D. Ohio 2000) ..................................................... 2, 24, 25

*City of Memphis v. Wells Fargo Bank, N.A.*,
    No. 09-2857-STA, 2011 WL 1706756
    (W.D. Tenn. May 4, 2011) ........................................................ 3, 6, 7, 10, 11, 20

*City of N.Y. v. Lead Indus. Ass'n, Inc.*,
    190 A.D. 2d 173, 597 N.Y.S. 2d 698 (N.Y. App. Div., May 13, 1993) ............ 25

- i -

*Covington v. Jefferson Cnty.,*
   358 F. 3d 626 (9th Cir. 2004) ............................................................... 4

*Danvers Motor Co., v. Ford Motor Co.,*
   432 F. 3d 286 (3d Cir. 2005) ............................................................... 4

*Dekalb Cnty., v. HSBC N. Am. Holdings, Inc.,*
   No. 1:12-CV-03640-JCJ, 2013 WL 7874104
   (N.D. Ga. Sept. 25, 2013) ....................................................... 3, 5, 7, 11

*Diaz v. Bank of Am. Home Loan Servicing,*
   No. CV 09-9286 PSG, 2010 WL 5313417 (C.D. Cal., Dec. 16, 2010) ............ 20

*Dinosaur Dev., Inc., v. White,*
   216 Cal. App. 3d 1310, 265 Cal. Rptr. 525(Cal. Ct. App. 1989) ...................... 24

*In re EasySaver Rewards Litig.,*
   737 F. Supp. 2d 1159 (S.D. Cal. 2010) ........................................... 24, 25

*Friends of the Earth Inc., v. Laidlaw Envtl. Servs.,*
   528 U.S. 167 (2000) ............................................................... 4

*Garcia v. Brockway,*
   526 F. 3d 456 (9th Cir. 2008) (en banc) ......................................... 12, 13, 16, 17

*Gladstone Realtors v. Village of Bellwood,*
   441 U.S. 91, 92 (1979) ....................................................... 1, 4, 7, 11

*Graoch Assocs. # 33, L.P. v. Louisville/Jefferson Cnty. Metro*
   *Human Relations Comm'n,*
   508 F. 3d 366 (6th Cir. 2007) ............................................................... 17

*Green v. Beazer Homes Corp.,*
   No. 3:07-1098-CMC, 2007 WL 2688612
   (D.S.C. Sept. 10, 2007) ............................................................... 9

*Havens Realty Corp. v. Coleman,*
   455 U.S. 363, 380 (1982). ....................................................... 12, 13, 15, 16

*House v. Cal State Mortg. Co.,*
   No. CV-F-08-1880 OWW- GSA, 2009 WL 2031775
   (E.D. Cal., July 9, 2009) ............................................................... 21

- ii -

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
Case No.: 2:13cv-09046-PA(AGRx)

*Kaing v. Pultegroup, Inc.*,
 464 Fed. App'x 630 (9th Cir. 2011) ..................................................... 9

*Keilholtz v. Superior Fireplace Co.*,
 No C 08-00836 CW, 2009 WL 839076
 (N.D. Cal. Mar. 30, 2009).......................................................... 24, 25

*Kimbrew v. Fremont Reorg. Corp.*,
 No. CV 08-03277 AG (ANX), 2008 WL 5975083
 (C.D. Cal. Nov. 17, 2008)......................................................... 15, 16

*Laub v. U.S. Dep't of Interior*,
 342 F.3d 1080 (9th Cir. 2003) ............................................................ 3

*Lowe v. City of Monrovia*,
 775 F. 2d 998 (9th Cir.1985) ........................................................... 21

*Mauro v. General Motors Corp.*,
 No. CIV. S-07-892 FCD GGH, 2008 WL 2775004
 (E.D. Cal. July 15, 2008) ................................................................ 25

*Mazza v. American Honda Motor Co.*,
 666 F.3d 581 (9th Cir. 2012) .......................................................... 24

*Maya v. Centex Corp.*,
 658 F. 3d 1060, 1071 (9th Cir. 2011). ......................................... 6, 11

*Mayor and City Council of Baltimore v. Wells Fargo Bank, N.A.*,
 No. CIV JFM-08-62, 2011 WL 1557759
 (D. Md. Apr. 22, 2011) ............................................................... 6, 11

*NAACP v. Ameriquest Mortg. Co.*,
 635 F. Supp. 2d 1096 (C.D. Cal. 2009).................................... 17, 19, 20

*National Wildlife Fed'n v. Burford*,
 871 F. 2d 849 (9th Cir. 1989) ..................................................... 4, 10

*Ohno v. Yasuma*,
 723 F. 3d 984 (9th Cir. 2013) ........................................................ 24

*Ojo v. Farmers Grp, Inc.*,
 600 F. 3d 1205 (9th Cir. 2010) ................................................... 1, 17

- iii -

*Pacific Shores Props., LLC v. City of Newport Beach*,
     730 F. 3d 1142 (9th Cir. 2013) ............................................................. 21

*Pack v. Fort Wash. II*,
     689 F. Supp. 2d 1237 (E.D. Cal. 2009) ................................................. 20

*Pfaff v. U.S. Dep't of Hous. & Urban Dev.*,
     88 F. 3d 739 (9th Cir.1996) ............................................................. 17, 1

*Ramirez v. Greenpoint Mrtg. Funding*,
     633 F. Supp. 2d 922 (N.D. Cal. 2008) .............................................. 16, 17

*Reinhart v. Lincoln Cnty.*,
     482 F. 3d 1225 (10th Cir. 2007) ............................................................ 17

*Roberts v. Corrothers*,
     812 F.2d 1173 (9th Cir. 1987) ............................................................ 1, 3

*Safe Air For Everyone v. Meyer*,
     373 F. 3d 1035 (9th Cir. 2004) ............................................................ 2, 3

*Sierra Club v. Morton*,
     405 U.S. 727 (1972) ............................................................................ 4, 5

*Smith v. City of Jackson*,
     544 U.S. 228 (2005) ............................................................................... 17

*Stokes v. JP Morgan Chase Bank, N.A*,
     No. 8:11-CV-02620, 2012 WL 527600
     (D. Md. Feb. 16, 2012) ........................................................................ 15

*Sun Valley Gasoline, Inc. v. Ernst Enters., Inc.*,
     711 F. 2d 138 (9th Cir. 1983) ................................................................. 2

*Taylor v. Accredited Home Lenders, Inc.*,
     580 F. Supp. 2d 1062 (S.D. Cal. 2008) ............................................. 17, 19

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
     No. M 07-1827 SI, 2011 WL 4345435
     (N.D. Cal. Sept. 15, 2011) .................................................................. 23

- iv -

*Tingley v. Beazer Homes Corp.*,
   No. 3:07CV176, 2008 WL 1902108
   (W.D.N.C. Apr. 25, 2008) ................................................................. 9

*Vega v. American Home Mrtg. Servicing, Inc.*,
   No. CV-10-02087-PHX-NVW, 2011 WL 2457398
   (D. Ariz. Jun. 20, 2011) ........................................................... 15, 16

*Walker v. Geico Gen. Ins. Co.*,
   558 F. 3d 1025 (9th Cir. 2009) ...................................................... 24

*White v. Lee*,
   227 F. 3d 1214 (9th Cir. 2000) ........................................................ 2

*White v. Smith & Wesson*,
   97 F. Supp. 2d 816 (N.D. Ohio 2000) ..................................2, 24, 25

*Williston Basin Interstate Pipeline Co. v. An Exclusive Gas Storage*
   *Leasehold & Easement*,
   524 F. 3d 1090 (9th Cir. 2008) ........................................................ 2

*Wolin v. Jaguar Land Rover N. Am., LLC*,
   617 F. 3d 1168 (9th Cir. 2010) ...................................................... 24

*Zanze v. Snelling Servs., LLC*,
   412 F. App'x 994 (9th Cir. 2011) ................................................... 24

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F. 3d 981 (9th Cir. 2009) ......................................................... 3

## STATUTES

42 U.S.C. § 3613(a)(1)(4) ................................................................ 12

42 U.S.C.A. § 3604(b), § 3605 ....................................................... 17

## OTHER AUTHORITIES

Cal. Const. art. 13a, §1 .................................................................. 7

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
Case No.: 2:13cv-09046-PA(AGRx)

## I.     INTRODUCTION

In the face of damning statistical evidence of lending discrimination resulting in foreclosures, BoA[1] moves to dismiss the City's complaint for lack of Article III standing under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6). BoA's motion should be denied.

First, under longstanding Ninth Circuit decisions such *Augustine* and *Roberts*, BoA's purported 12(b)(1) factual attack on Article III causation is impermissible because causation must also be established for merits such that the two are intertwined.  Instead, the 12(b)(6) standard applies.  *See* pp. 2-3, below.

Second, the City satisfies the requirements of Article III standing.  The four district courts to have previously addressed this issue (*County of Dekalb*, *City of Memphis*, *City of Baltimore*, and *City of Birmingham*) all agreed that under the Supreme Court's *Gladstone* decision, decreases in property tax revenues and/or increases in municipal services due to vacancies constitute injury in fact.  *See* pp. 3-7, below.  Moreover, this injury is fairly traceable to BoA's conduct where the City has performed statistical analyses establishing that loans with predatory terms issued to minorities were more likely to result in foreclosure.  *See* pp. 7-11, below.

Third, the City's FHA cause of action is timely because, under the Supreme Court's *Havens* decision, the continuing violations doctrine applies to BoA's eight year pattern and practice of issuing a variety of predatory mortgage loans to African-American and Latino borrowers in Los Angeles.  *See* pp. 12-16, below.

Fourth, under Ninth Circuit decisions such as *Ojo* and *Pfaff*, the City can establish a violation under FHA by showing the disparate impact of BoA's lending practices on minorities in Los Angeles.  *See* p. 17, below.  And the City has so alleged in its complaint.  *See* pp. 18-20, below.

---

[1] "BoA" refers collectively to Defendants Bank of America Corp., Bank of America, N.A., Countrywide Financial Corp., Countrywide Home Loans, and Countrywide Bank, FSB.

- 1 -

Fifth, the City has also adequately alleged intentional discrimination.  *See* pp. 20-21, below.

Finally, as recognized in other suits (*City of Boston*, *City of Cleveland*, and *City of New York*), the City properly states a claim for restitution where it has conferred a benefit on BoA by paying for its externalities, or costs of harm caused by its mortgage lending discrimination.  *See* pp. 23-25, below.

## II.    LEGAL STANDARD

"Because standing pertain[s] to a federal court's subject-matter jurisdiction under Article III, [it is] properly raised in a motion to dismiss under [Rule] 12(b)(1), not Rule 12(b)(6)."[2]  Rule 12(b)(1) jurisdictional attacks can be either facial or factual.  In a facial attack, the allegations are presumed true and the "challenger asserts that the[y] are insufficient on their face to invoke federal jurisdiction."[3]  "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction."[4]  "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint" and "need not presume the truthfulness of the plaintiff's allegations."[5]

The Ninth Circuit has long held, however, that courts should refrain from resolving factual issues where "the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits."[6]  The question of jurisdiction and the merits of an action

---

[2] *White v. Lee*, 227 F. 3d 1214, 1242 (9th Cir. 2000).  Internal citations and quotations omitted and emphasis in original unless otherwise indicated.

[3] *Safe Air For Everyone v. Meyer*, 373 F. 3d 1035, 1039 (9th Cir. 2004).

[4] *Id.*

[5] *Id.*

[6] *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983) (emphasis added); *see also Sun Valley Gasoline, Inc. v. Ernst Enters., Inc.*, 711 F. 2d 138, 139 (9th Cir. 1983); *Safe Air*, 373 F. 3d at 1039; *Williston Basin Interstate Pipeline Co. v. An Exclusive Gas Storage Leasehold & Easement*, 524 F. 3d 1090, 1094 (9th Cir. 2008) ("As a general rule, when the question of jurisdiction and the merits of the action are intertwined, dismissal for lack of subject matter jurisdiction is improper.").

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
Case No.: 2:13cv-09046-PA(AGRx)

are intertwined where, as here, "a statute provides the basis for both the subject matter jurisdiction of the federal court and the plaintiff's substantive claim for relief."[7]  Thus, "[t]he relatively expansive standards of a 12(b)(1) motion are not appropriate for determining jurisdiction in a case like this."[8]  Instead, the Rule 12(b)(6) standard is "applicable in motions challenging subject matter jurisdiction when such jurisdiction may be contingent upon factual matters in dispute."[9]

          In ruling on BoA's motion to dismiss under 12(b)(6), the Court must accept the City's allegations as true and construe them in the light most favorable to the City.[10]  Dismissal is "inappropriate unless the plaintiffs' complaint fails to 'state a claim to relief that is plausible on its face.'"[11]  The complaint need not contain "detailed factual allegations."[12]  "[E]nough to raise a right to relief above the speculative level" will suffice.[13]

### III.   ARGUMENT

### A.   The City Satisfies the Requirements of Article III Standing.

          "[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely

---

[7] *Safe Air*, 373 F.3d at 1039.

[8] *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987); *see also Dekalb Cnty., v. HSBC N. Am. Holdings, Inc.*, No. 1:12-CV-03640-JCJ, 2013 WL 7874104, at *8 (N.D. Ga. Sept. 25, 2013) ("*County of Dekalb*") (refusing to resolve factual attack on causation because standing intertwined with merits under FHA); *City of Memphis v. Wells Fargo Bank, N.A.*, No. 09-2857-STA, 2011 WL 1706756, at *10 (W.D. Tenn. May 4, 2011) ("*City of Memphis*") (same).

[9] *Roberts*, 812 F. 2d at 1177; *see also Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003) ("discovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary").

[10] *Zucco Partners, LLC v. Digimarc Corp.*, 552 F. 3d 981, 989 (9th Cir. 2009).

[11] *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[12] *Twombly*, 550 U.S. at 555.

[13] *Id.* at 555-56.

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
Case No.: 2:13cv-09046-PA(AGRx)

speculative, that the injury will be redressed by a favorable decision."[14]  BoA contends that the "City has failed to plead an injury in fact" and that it "cannot show an injury in fact fairly traceable to Defendants' conduct."[15]  It is wrong on both counts.

### 1.   The City Alleges Injury-in-Fact.

As then-Judge Alito has explained:  "The contours of the injury-in-fact requirement, while not precisely defined, are very generous, requiring only that claimant allege some specific, identifiable trifle of injury."[16]  The relevant inquiry is "whether [defendants'] actions have caused 'reasonable concern' of injury to [plaintiffs]."[17]  Here BoA's discrimination has caused reasonable concern of economic loss to the City.

In *Gladstone Realtors v. Village of Bellwood*, the Supreme Court held that economic injury to the village as a consequence of alleged violations of the Fair Housing Act satisfied Article III.[18]  In *Gladstone Realtors*, the Village of Bellwood alleged that the defendant realtors steered prospective home buyers interested in equivalent properties to different areas according to their race.  In concluding that the facts alleged in the complaint were sufficient to provide standing under Article III, the Supreme Court explained that "[i]f [defendant realtors]' steering practices significantly reduce the total number of buyers in the Bellwood housing market, prices may be deflected downward."[19]  The Court then continued with language that

---

[14] *Friends of the Earth Inc., v. Laidlaw Envtl. Servs.,* 528 U.S. 167, 180-81 (2000) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992).  *See also id.* at 560, n.1 (explaining that "particularized" means simply that "the injury must affect the plaintiff in a personal and individual way").

[15] Defs.' Mot. to Dismiss, ECF No. 27-1 ("MTD"), at 7-17.

[16] *Danvers Motor Co., v. Ford Motor Co.,* 432 F. 3d 286, 294 (3d Cir. 2005); *see also National Wildlife Fed'n v. Burford,* 871 F. 2d 849, 854 (9th Cir. 1989).

[17] *Covington v. Jefferson Cnty.,* 358 F. 3d 626, 639 (9th Cir. 2004) (citing *Laidlaw,* 528 U.S. at 183).

[18] 441 U.S. 91, 92 (1979); *see also Sierra Club v. Morton,* 405 U.S. 727, 733 (1972) ("[P]alpable economic injuries have long been recognized as sufficient to lay the basis for standing").

[19] *Gladstone Realtors,* 441 U.S. at 110.

- 4 -

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
Case No.: 2:13cv-09046-PA(AGRx)

controls here: "*A significant reduction in property values directly injures a municipality by diminishing its tax base*, thus threatening its ability to bear the costs of local government and to provide services."[20]  Because the City has alleged injury based on a diminished tax base, it has satisfied Article III.[21]

Likewise, in *Maya v. Centex Corp.*, the Ninth Circuit held that allegations of decreased property value satisfied Article III and rejected the argument that decreased value based on the defendants' misconduct must be ferreted out from other causes at the pleading stage:

> More fundamentally, the district court's reasoning misses the thrust of plaintiffs' claims.  Plaintiffs argue that defendants' acts caused their homes to lose value *above and beyond* those losses caused by general economic conditions. Thus, disregarding the vicissitudes of the national housing market, the portion of the diminution in the value of plaintiffs' property attributable to defendants' acts remains. To be sure, plaintiffs would need to quantify the damages resulting from decreased value in order to recover, but that isn't necessary to establish injury at the pleading stage.[22]

Similarly, the only four district courts to address the issue before this Court all decided that the injuries alleged here satisfy Article III.  In *City of Birmingham v. Citigroup Inc.*, the district court determined that "reduced property values, reduced property tax revenues, increased spending on police and fire protection, and increased spending to secure foreclosed homes that are abandoned" were "financial injuries constitut[ing] injuries in fact for the purpose of determining standing."[23]  In *County of Dekalb*, the district court held that "reduction in property tax values and

---

[20] *Id.* at 110-11 (emphasis added).

[21] Complaint, ECF No. 1, ¶¶ 172-189. References to the Complaint herein will be to "¶__."

[22] 658 F. 3d 1060, 1071 (9th Cir. 2011).

[23] No. CV-09-BE-467-S, 2009 WL 8652915, at *3 (N.D. Ala. Aug. 19, 2009) ("*City of Birmingham*").

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
Case No.: 2:13cv-09046-PA(AGRx)

- 5 -

tax base" satisfied "injury in fact as to a municipal corporation."[24]  In *Mayor and City Council of Baltimore v. Wells Fargo Bank, N.A.*, the district court held that "increased [municipal] expenditures themselves clearly constitute a concrete financial injury."[25]  And in *City of Memphis*, the district court agreed that city services at foreclosed and vacant properties, as well as "lost property tax revenues as a result of the devaluation of properties," satisfied the injury-in-fact requirement.[26]  There is no question that the City's allegations satisfy Article III.[27]

Against these clear precedents, BoA makes two arguments.  First, it argues that the assessed values of neighboring homes are not driven down by foreclosures because, due to the operation of Proposition 13, "the City does not, as a general matter, reassess individual property at its fair market value each year."[28]  Of course, the City does not reassess at all – that is the job of the County Assessor's Office.  And, as BoA acknowledges, the assessor can "reduce the assessed value of a property to the property's current market value."[29]  Moreover, BoA does not dispute that decreases in the assessed values of foreclosed homes themselves drive down property tax revenues to the City.[30]  Nor does it contest that neighboring homes will experience decreased valuation upon their sale.  Indeed, the operation of Proposition 13 locks in losses to the City when foreclosed homes, or those neighboring them, are

---

[24] 2013 WL 7874104, at *4.

[25] No. CIV JFM-08-62, 2011 WL 1557759, at *5 (D. Md. Apr. 22, 2011) ("*City of Baltimore*").

[26] 2011 WL 1706756, at *7.

[27] ¶¶ 172-189 (allegations of injury based on decreased property taxes); ¶¶ 190-94 (allegations of injury based on provision of municipal services).

[28] MTD at 8, 16.

[29] *Id.* at n. 8.

[30] For example, one of the sample properties in the complaint that BoA concedes was foreclosed upon declined in assessed value from $412,000 to $265,000 after the foreclosure sale. *See* Decl. of Elaine T. Byszewski ("Byszewski Decl."), at ¶ 3.  BoA also asserts that four of the sample properties in the Complaint "did not result in foreclosure conducted by Bank of America" MTD at 6.  But the City's theory is not limited to properties foreclosed by BoA – it is limited to properties for which BoA issued discriminatory loans and thereafter entered into foreclosure (by any bank) whether or not they became bank owned.

- 6 -

reassessed at a depressed value upon their sale, precisely because assessments cannot rise by more than 2% per year.[31]

Second, BoA suggests that the City must identify services provided at specific properties,[32] even though *County of Dekalb*, *City of Memphis,* and *City of Birmingham* required no such thing.[33]  And BoA's contention that the City "certainly knows what it has spent" is incongruent with the allegation that "it still must provide costly municipal services" in order "to remedy blight and unsafe and dangerous conditions."[34]

### 2.  The City Shows Injury Fairly Traceable to BoA's Conduct.

The Ninth Circuit has explained that "[t]o survive a motion to dismiss for lack of constitutional standing, plaintiffs must establish a line of causation between defendants' action and their alleged harm that is more than attenuated."[35]  This causal chain "does not fail simply because it has several links, provided those links are not hypothetical or tenuous and remain plausible."[36]  Thus, the "*Gladstone* Court concluded that a municipality could demonstrate injuries fairly traceable to a realty firm's violations of the FHA where the injuries to the municipality included… a decline in property values[] and diminished tax receipts."[37]

Here the City alleges that BoA engaged in discriminatory lending practices (first link) resulting in foreclosures (second link), which in turn caused a reduction in property values that diminished the tax base, as well as created an increased need for

---

[31] Cal. Const. art. 13a, §1.

[32] MTD at 8, 16-17.

[33] *County of Dekalb*, 2013 WL 7874104, at *3-4 (finding injury in fact over the bank's objection that the counties did "not provide the address of a property where they might have suffered injury"); *City of Memphis,* 2011 WL 1706756, at *9 (permitting the plaintiffs to focus on specific properties and "others like them"); *City of Birmingham,* 2009 WL 8652915, at *3 (no requirement that the city identify specific properties).  *See also* note 54, below.

[34] MTD at 8; ¶¶ 174, 190.

[35] *Maya,* 658 F. 3d at 1070.

[36] *Id.*

[37] *City of Memphis,* 2011 WL 1706756, at *9 (citing *Gladstone,* 441 U.S. at 110-111).

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
Case No.: 2:13cv-09046-PA(AGRx)

city services (third links).  Indeed, beyond mere allegations, the City has analyzed publically available loan data for 2,398 discriminatory loans issued by BoA in Los Angeles that resulted in foreclosure.[38]  Contrary to BoA's contention,[39] regression analysis performed by the City's expert provides damning statistical evidence that BoA engaged in discriminatory lending practices (the first link):

¶ 151:  A regression analysis of this data controlling for borrower race and objective risk characteristics such as credit history, loan-to-value ratio, and the ratio of loan amount to income demonstrates that, from 2004-2011, an African-American borrower was 1.522 times more likely to receive a predatory loan as was a white borrower possessing similar underwriting and borrower characteristics.  The regression analysis further demonstrates that the odds that a Latino borrower would receive a predatory loan were 1.325 times greater than that of a white borrower possessing similar underwriting and borrower characteristics.

¶ 152:  An African-American borrower with a FICO score above 660 was 1.396 times more likely to receive a predatory loan as was a white borrower with similar underwriting and borrower characteristics.  A Latino borrower with a FICO score above 660 was 1.167 times more likely to receive a predatory loan as was a white borrower with similar underwriting and borrower characteristics.

¶ 153:  [A] borrower in a heavily minority census tract (census tract consisting of at least 80% African-American or Latino households) was 1.676 times more likely to receive a predatory loan as was a borrower with similar characteristics in a heavily white neighborhood (census tract with at least 80% white households).

Moreover, the regression analysis also shows that BoA's discriminatory lending practices resulted in foreclosures (the second link):

---

[38] ¶ 195.

[39] MTD at 11 (arguing that "it will be impossible for the City to trace its loss to Defendants unless the loan was discriminatory").

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
Case No.: 2:13cv-09046-PA(AGRx)

¶ 159:  [A] BoA/Countrywide loan in a predominantly African-American or Latino neighborhood is 4.184 times more likely to result in foreclosure as is a BoA/Countrywide loan in a predominantly white neighborhood.

¶ 170:  [A] predatory loan made to an African-American borrower was 3.026 times more likely to result in foreclosure than was a non-predatory loan made to a white borrower with similar borrower and underwriting characteristics.  A predatory loan made to a Latino borrower was 3.406 times more likely to result in foreclosure than was a non-predatory loan made to a white borrower with similar risk characteristics.[40]

And the Complaint alleges that these foreclosures in turn caused a reduction in property values that diminished the tax base, as well as created an increased need for city services (the third links).[41]  Once again, this satisfies Article III.

BoA relies on *Maya* because there the Ninth Circuit held that the plaintiffs had not alleged causation sufficient to satisfy Article III.[42]  But that was because in *Maya* the plaintiffs had not "distinguish[ed] the effect of defendants' actions from general economic influences."[43]  As just described, the City has already done regression analysis.[44]  As the Ninth Circuit explained in *Maya*, such "[e]xpert testimony can be used to explain the causal connection between defendants' actions and plaintiffs' injuries, even in the context of other market forces."[45]  Thus, the City's regression analysis can establish a causal connection between BoA's discriminatory lending

---

[40] BoA mistakenly contends that these allegations are vague for "not identifying what terms make a loan discriminatory," MTD at 13, but the City did so at ¶ 143.

[41] ¶¶ 172-189 (allegations of injury based on decreased property taxes); ¶¶ 190-94 (allegations of injury based on provision of municipal services).

[42] BoA's citation to the Ninth Circuit's unpublished decision in *Kaing v. Pultegroup, Inc.*, 464 Fed. App'x 630 (9th Cir. 2011), is not helpful as it lacks analysis on this point, and, in any event, the plaintiff's complaint did not include regression analyses as here.

[43] *Maya*, 658 F.3d at 1072-73.  The Ninth Circuit permitted the plaintiffs to amend to offer such proof. *Id.*

[44] *E.g.*, ¶170.

[45] *Maya*, 658 F.3d at 1073.  This distinguishes *Tingley v. Beazer Homes Corp.*, No. 3:07CV176, 2008 WL 1902108 (W.D.N.C. Apr. 25, 2008), and *Green v. Beazer Homes Corp.*, No. 3:07-1098-CMC, 2007 WL 2688612 (D.S.C. Sept. 10, 2007). *See* MTD at 6-7 n.6.

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
Case No.: 2:13cv-09046-PA(AGRx)

practices and the foreclosures at issue notwithstanding its detailed description of other "macro-economic factors" at work.[46]

Moreover, the City alleges that the degree to which property values diminished due to foreclosures attributable to BoA "can be analyzed through Hedonic regression" to "distinguish[] from any loss attributable to non-BoA foreclosures or other causes."[47]  Of course, plaintiffs are not required to prove the amount of damages to which they are entitled at the pleading stage to establish standing.[48]  And the City alleges damages "based on municipal services that it still must provide to remedy blight[ed] and unsafe and dangerous conditions which exist at vacant properties,"[49] which is consistent with the Ninth Circuit's admonition that "[p]laintiffs need only demonstrate the threats or potential of injury."[50]

The district court in *City of Memphis* determined that the city and county had "plausibly alleged a causal connection between their injuries and the conduct of Defendants" where they alleged that the defendant bank had "targeted individual property owners with specific lending practices (reverse-redlining), resulting in specific effects (foreclosures and vacancies) at specific properties, which in turn

---

[46] MTD at 11-12 (citing the Riddiough Report).  Moreover, the purported reasons why borrowers become unable to make their payments, as described in the Courchane Report and the Cacho Declaration, *see* MTD at 10-11, are not inconsistent with BoA's predatory loan terms causing foreclosures where, for example, a borrower experiencing a drop in income would have still been able to make the payment on a non-predatory loan.  ¶¶ 166-67.  *See, e.g., Adkins v. Morgan Stanley*, No. 12 CV 7667(HB), 2013 WL 3835198, at *4 (S.D.N.Y. Jul. 25, 2013) (holding that allegations of injuries deriving from high-risk loans met "clearly meet the traceability requirement" because "a plaintiff need not allege that the defendant's actions were the very last step in the chain of causation").

[47] ¶ 184.  *See* MTD at 13-15.

[48] *Nat'l Wildlife Fed'n*, 871 F. 2d at 853-54; *Maya*, 658 F. 3d at 1071 ("To be sure, plaintiffs would need to quantify the damages resulting from decreased value in order to recover, but that isn't necessary to establish injury at the pleading stage.").

[49] ¶ 174; *see also* ¶¶ 190-94 (describing the municipal services that must be provided).  As twenty percent of homes are vacated *even prior* to completion of the foreclosure process, a reasonable inference from the allegations of foreclosures caused by BoA's discriminatory lending practices is that a significant portion of these sit vacant at some point during or after the foreclosure process.  *See* http://www.realtytrac.com/content/foreclosure-market-report/owner-vacated-foreclosure-update-7771.

[50] *Nat'l Wildlife Fed'n*, 871 F. 2d at 854.

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
Case No.: 2:13cv-09046-PA-(AGRx)

created specific costs (services and tax revenue) for local government."[51]  The court explained that these "allegations distinguish[ed the p]laintiffs' claims from those alleged by the City of Birmingham (and the City of Baltimore in its initial pleadings) in similar FHA suits."[52]  Thus, "[a]pplying *Gladstone* and its progeny to the pleadings in this case, the Court conclude[d] that [the p]laintiffs have alleged their standing to recover for injuries traceable to the acts of [the d]efendants."[53]  Likewise, in *City of Baltimore*, the city's amended complaint included "analysis of hard data" and causation allegations like those here[54] such that the city "plausibly stat[ed] a fairly traceable causal connection between its injuries and [the bank]'s lending activity."[55]  And in *County of Dekalb* "empirical data contained in the Complaint" similarly satisfied the second component of standing.[56]

In stark contrast, the complaint in *City of Birmingham* was devoid of any data analysis and even of any allegation that it could be performed.[57]  So BoA's reliance on that case is misplaced, because the district court's determination that the city's injuries were not fairly traceable to the alleged misconduct is completely inapposite here.  As to causation, the Complaint here is like the one in *City of Memphis, City of Baltimore,* and *County of Dekalb* – not *City of Birmingham.*

---

[51] 2011 WL 1706756, at *9.

[52] *Id.*

[53] *Id.*

[54] *Compare City of Baltimore* at *3, *with* ¶¶ 166-67.  BoA focuses on *City of Baltimore's* misplaced requirement that the city identify the specific properties at issue.  MTD at 17.  *City of Memphis*, on the other hand, recognized that specific addresses identified in the complaint "represent[ed] a larger number of addresses affected by [the d]efendants' lending practices" that "actually resulted in foreclosures" and would be identified as the litigation progressed.  2011 WL 1706756, at *9; *see also County of Dekalb*, 2013 WL 7874104, at *7.  As the City has not yet had the benefit of discovery, *County of Dekalb* and *City of Memphis* provide the better course.

[55] 2011 WL 1557759, at *4.

[56] 2013 WL 7874104, at *7.

[57] *See City of Birmingham Complaint*, attached as Exhibit A to the Byszewski Decl.  *See* MTD at 17.

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
Case No.: 2:13cv-09046-PA-(AGRx)

**B.      The City's FHA Cause of Action is Timely Because the Continuing Violations Doctrine Applies.**

BoA's assertion that the Complaint is somehow barred by the pertinent statute of limitations has no basis in fact or law and should be summarily rejected.

Private civil actions pursuant to the Fair Housing Act are governed by a two year statute of limitations.[58]  The time period commences "after the occurrence or the *termination* of an allegedly discriminatory housing practice."

In the seminal case of *Havens Realty Corp. v. Coleman*, the Supreme Court held that as a result of the broad remedial Congressional intent underlying FHA, "a continuing violation of the Fair Housing Act should be treated differently from one discrete act of discrimination."[59]  Consequently, the Court concluded that "where a plaintiff, pursuant to [FHA], challenges not just one incident of conduct violative of the Act but an unlawful practice that continues into the limitations period, the complaint is timely when it is filed within [the limitations period] of the last asserted occurrence of that practice."[60]  As the Ninth Circuit recently explained, Congress codified the continuing violation doctrine articulated in *Havens* and amended FHA "to include both the occurrence and *the termination* of an alleged discriminatory housing practice as events triggering the two-year statute of limitations."[61]

The continuing violation perpetrated by BoA at issue here is the unbroken eight year pattern and practice of issuing a variety of predatory mortgage loans to African-American and Latino borrowers residing within the City of Los Angeles. This conduct, commonly referred to as "reverse redlining," constitutes a blatant violation of FHA.  The Complaint alleges detailed statistical analysis pertaining to a wide variety of predatory loans as well as confidential witness statements from

---

[58] 42 U.S.C. § 3613(a)(1)(4).
[59] 455 U.S. 363, 380 (1982).
[60] *Id.* at 380-381.
[61] *Garcia v. Brockway*, 526 F. 3d 456, 462 (9th Cir. 2008) (en banc).

- 12 -

1    former BoA employees who qualitatively corroborate the quantitative data analysis

2    confirming the sweeping scope of BoA's misconduct.

3        Nevertheless, BoA maintains that the well-established rule articulated in

4    *Havens* has no application to this case because "*Havens* simply does not permit a

5    'continuing violation' exception to be based on actions occurring within the

6    limitations period that are separate and different than the conduct that is at issue in

7    the complaint."[62]  BoA ignores actual charging allegations, mischaracterizes others,

8    and does not provide legal authority compelling the outcome it desires.

9        First, BoA posits that the City has merely alleged in conclusory fashion that

10   the conduct at issue is continuing and that such a "bare legal allegation is too

11   generalized to support a plausible claim for relief where the limitations bar is patent

12   on the face of the complaint."[63]  Nothing could be further from the truth.

13       The Complaint alleges detailed statistical evidence specifically focusing on

14   BoA's mortgage loan originations within Los Angeles between 2004 and December

15   31, 2011, coupled with confidential witness statements throughout the Complaint in

16   support of the continuing violations doctrine.  The expansive nature of BoA's

17   pattern and practice is further confirmed by the fact that the City has already

18   identified 2,398 discriminatory loans issued by BoA that resulted in foreclosure (and

19   the number of discriminatory loans originated exceeds this number because not all

20   discriminatory loans result in foreclosure).[64]  The Complaint specifies that the types

21   of predatory loans at issue include subprime loans, high cost loans, interest-only

22   loans, balloon payment loans, loans with prepayment penalties, negative

23   amortization loans, no documentation loans, and ARM loans with teaser rates.[65]

24

25

26   _____

     [62] MTD at 19.

27   [63] *Id.* at 18.

     [64] ¶ 195.

28   [65] ¶ 143.

                                                                - 13 -

     PLAINTIFF'S OPPOSITION TO
     DEFENDANTS' MOTION TO DISMISS
     Case No.: 2:13cv-09046-PA(AGRx)

The Complaint further alleges that "after several years of issuing abusive subprime loans throughout the minority communities of Los Angeles, commencing in or around 2007, BoA once again adapted to changing market conditions, while continuing its pattern and practice of issuing a variety of discriminatory loan products [*i.e.,* reverse redlining]."[66] One such example involves BoA's shift in 2008 from issuing discriminatory subprime loans to higher cost FHA/VA loans and Home Equity Lines of Credit, thus continuing BoA's discriminatory lending practices.[67]

The Ninth Circuit's decision in *O'Loghlin v. County of Orange* further provides an appropriate rebuke to BoA's position. According to the Court:

> A consequence of the continuing violations doctrine is that a defendant cannot insulate itself from liability by engaging in a series of related violations of Title VII and asserting that the statute of limitations period has run for the first violation in the series. This consequence suggests that an important purpose of the continuing violation doctrine is to prevent a defendant from using its earlier illegal conduct to avoid liability for later illegal conduct of the same sort.[68]

The afore-mentioned allegations similarly dispose of BoA's related and wholly frivolous argument that the Complaint repeatedly admits that its reverse redlining practice terminated in 2007-2008.[69] The City made no such concession, and BoA's conclusion cannot in any manner be supported by a faithful reading of the actual charging allegations in the Complaint.

Second, BoA posits that the City "does not even allege conduct that was continuing, *i.e.*, that Defendants engaged in the discriminatory conduct prior to and

---

[66] ¶ 8.

[67] ¶¶ 86-90. FHA/VA loans are characterized as higher risk loans because (1) they are typically more expensive for a borrower than conventional loans, and include fees and costs not associated with conventional loans; and (2) several of the government loan programs permit negative amortization. ¶ 86.

[68] 229 F. 3d 871, 875 (9th Cir. 2000).

[69] MTD at 17-18.

- 14 -

during the two-year limitations period.  The Complaint does not even allege reverse redlining occurred after 2008, and instead alleges the opposite, that credit was tightening."[70]

Paragraph 8 of the Complaint clearly refutes BoA's material mischaracterization of the Complaint.  Rather, as the City alleges, BoA adapted to changing market conditions while continuing to engage in reverse redlining in or around 2007.  At the same time, BoA also decided to curtail the issuance of mortgage credit to minority borrowers in Los Angeles.  In other words, BoA not only refused to extend credit to minority borrowers when compared to white borrowers, but when BoA did extend credit to minority borrowers, it did so on predatory terms.  Consequently, the actual charging allegations clearly refute BoA's blatant attempt to mischaracterize the actual predatory lending practices alleged in the Complaint.[71]  It should also be noted that there are two additional instances where BoA mischaracterizes the actual charging allegations and posits that there are no allegations of reverse redlining post-2008.[72]  Paragraph 8 of the Complaint clearly alleges reverse redlining post-2008.

Third, BoA contends that Judge Guilford's unpublished decision in *Kimbrew v. Fremont Reorg. Corp.*, precludes the application of the continuing violation

---

[70] MTD at 18-16.

[71]   BoA's reliance on *Stokes v. JP Morgan Chase Bank, N.A*,, No. 8:11-CV-02620, 2012 WL 527600 (D. Md. Feb. 16, 2012), is misplaced.  MTD at 18, n.17.  The *Stokes* Court rejected application of the continuing violations doctrine for the simple reason that unlike Havens, "none of the allegedly discriminatory loans closed within the relevant limitations period."  *Id.* at *8.  The Complaint in the instant case establishes exactly the opposite – that BoA did indeed engage in discriminatory lending within two years of the date the City filed its action.  BoA's reliance on the Ninth Circuit's unpublished opinion in *Alpha III, Inc. v. City of San Diego*, 187 F. App'x 709, 711 (9th Cir. 2006) is likewise unavailing because there was no act of discrimination or retaliation that occurred during the limitations period.  MTD at 19.

   BoA's citation to *Vega v. American Home Mrtg. Servicing, Inc.*, No. CV-10-02087-PHX-NVW, 2011 WL 2457398 (D. Ariz. Jun. 20, 2011), merely addresses the continuing ill effect stemming from the issuance of a discriminatory loan.  The focus of the continuing violations doctrine in the instant case is predicated upon the issuance of predatory loans in Los Angeles.  While the effects of that discriminatory lending practice are certainly addressed in the Complaint, they do not form the basis of the City's continuing violations theory.

[72] MTD at 5, 23.

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
Case No.: 2:13cv-09046-PA(AGRx)

doctrine.[73]  Judge Guilford concluded that the decision to mark-up loans to four borrowers constituted single acts of misconduct which occurred outside of the limitations period, thereby precluding application of the doctrine.[74]

Judge Virginia Phillips from the Central District reached a contrary conclusion in *Garcia v. Countrywide Fin. Corp.*, holding that Countrywide's sale to plaintiff of an allegedly high-cost loan which occurred during the limitations period triggered the continuing violation doctrine articulated by the *Havens* Court.[75]  In any event Judge Guilford's decision does not govern the resolution of this issue.

With regard to the reverse redlining claim, the Complaint and detailed statistical analysis set forth therein allege that the discriminatory conduct occurred between 2004 through December 31, 2011, and is analyzed through that eight year time period.[76]  Consequently, the Complaint is timely pursuant to the continuing violations doctrine because it was filed on December 6, 2013, less than two years after the last alleged act of reverse redlining.[77]

_____

[73] No. CV 08-03277 AG (ANX), 2008 WL 5975083 (C.D. Cal. Nov. 17, 2008). *See* MTD at 19-25.

[74] *Kimbrew,* 2008 WL 5975083, at *3.

[75] No. ED CV 071161-VAP-JCRx, 2008 WL 7842104, at *10 (C.D. Cal. Jan. 17, 2008).  The *Kimbrew* Court attempts to distinguish Judge Phillips' decision by explaining that she relies upon the prong of the *Havens* decision triggering the continuing violations doctrine, whereas the facts in *Kimbrew* are somehow analogous to the "tester" claims at issue in *Havens* which do not trigger the continuing violations doctrine.  *Kimbrew*, 2008 WL 5975083, at *3-4 .  This purported distinction is illogical because both *Garcia* and *Kimbrew* involve discriminatory loan pricing.  The Court in *Subramaniam v. Beal* (No. 3:12-CV-01681-MO, 2013 WL 5462339 (D. Or. Sept. 27, 2013), also recognized that the holding in *Kimbrew* was at odds with another decision concerning the question whether the issuance of a discriminatory loan triggers the continuing violation doctrine.  *Id*. at *11.

The unpublished *Kimbrew* decision is also at odds with the published decision in *Ramirez v. Greenpoint Mrtg. Funding*, 633 F. Supp. 2d 922 (N.D. Cal. 2008), holding that the mere fact that while each discriminatory loan origination "could be seen as a separate violation of the FHA and ECOA, this does not mean that the continuing violation doctrine does not apply."  *Id*. at 930.

[76] ¶ 144, n. 28.

[77] In a footnote BoA also contends that the City's claims are stale because "the City itself has been considering whether to file them since at least 2011."  MTD at 18, n.16.  BoA fails to provide citation to any authority which explains why this statement has legal relevance in the context of the continuing violations doctrine.  Moreover, BoA fails to explain why the adoption of a Motion on December 20, 2011 directing the City Attorney to meet with outside counsel to discuss the case could possibly impact the continuing violation doctrine given that the Complaint alleges a pattern and practice of predatory lending conduct that was still occurring subsequent to December 20th.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### C.    The Complaint States a Claim Under FHA.

#### 1.    The City Properly States a Claim for Disparate Impact.

##### a.    FHA prohibits disparate impact discrimination.

FHA proscribes discrimination in the terms or conditions of residential real-estate related sales and transactions.[78]  The Act prohibits not just intentional discrimination "but also actions that have a discriminatory effect based on race (disparate-impact discrimination)."[79]  BoA concedes – as it must – that Ninth Circuit case law currently provides for such a disparate impact claim under FHA.[80]  Nonetheless, BoA argues that this Court should disregard Ninth Circuit case law in light of *Smith v. City of Jackson*.[81]  The argument has no merit.

BoA "read[s] *Smith* too broadly, and no court has applied *Smith* to find that disparate impact claims are not cognizable under the FHA []."[82]  Indeed, this district court previously ruled that it "declines to hold that *Smith* overturned Ninth Circuit precedent recognizing disparate impact claims under the FHA[]."[83]  Accordingly, the City may bring a disparate impact claim under FHA.

---

The purpose of the discovery rule is to "extend the time from which the limitations period starts to run until the plaintiff knows both the existence and cause of his injury." *Garcia*, 526 F.3d at 465 (citing *United States v. Kubrick*, 444 U.S. 111, 113 (1979).  Consequently, why should a plaintiff be expected – let alone required – to file suit as soon as it is on notice of a FHA violation when that violation is still continuing into the future?  Rather, the continuing violations doctrine permits the City to wait and sue within two years of the issuance of the last discriminatory mortgage loan by BoA, which is precisely what occurred in this case.  BoA's Opposition establishes that it did not take this issue seriously, and neither should this Court.

[78] *See* 42 U.S.C.A. § 3604(b), § 3605.

[79] *Ojo v. Farmers Grp, Inc.*, 600 F. 3d 1205, 1207 (9th Cir. 2010); *see also Pfaff v. U.S. Dep't of Hous. & Urban Dev.*, 88 F. 3d 739, 745-46 (9th Cir.1996).

[80] MTD at 20, n.18.

[81] 544 U.S. 228 (2005).

[82] *Ramirez v. GreenPoint Mortg. Funding, Inc.*, 633 F. Supp. 2d 922, 926-27 (N.D. Cal. 2008); *see also Ojo*, 600 F. 3d at 1207; *Affordable Hous. Dev. Corp. v. City of Fresno*, 433 F.3d 1182, 1194 (9th Cir. 2006).  Like the Ninth Circuit, other circuit courts have upheld disparate impact claims under FHA since the *Smith* case.  *See, e.g.*, *Graoch Assocs. # 33, L.P. v. Louisville/Jefferson Cnty. Metro Human Relations Comm'n*, 508 F. 3d 366, 392 (6th Cir. 2007); *Reinhart v. Lincoln Cnty.*, 482 F. 3d 1225, 1229 (10th Cir. 2007).

[83] *NAACP v. Ameriquest Mortg. Co.*, 635 F. Supp. 2d 1096, 1105 (C.D. Cal. 2009); *see also Taylor v. Accredited Home Lenders, Inc.*, 580 F. Supp. 2d 1062, 1067 (S.D. Cal. 2008) (same).

- 17 -

### b.    The City adequately alleges disparate impact.

BoA maintains that the City has not identified specific challenged practices or alleged facts showing that the practices had a disparate impact on minority borrowers.[84]  BoA is wrong.  Far from just alleging a generalized policy of discrimination, the City alleges and details several specific practices.  As set forth in the Complaint, the City challenges BoA's: (i) targeting of minority neighborhoods in Los Angeles for predatory loans (excessive interest rates, points, fees, penalties, etc.), *i.e.*, reverse redlining;[85] (ii) providing broad discretion to loan officers and others responsible for mortgage lending, while failing to monitor this discretion to ensure that borrowers were being placed in loan products on a nondiscriminatory basis, and while BoA had notice of widespread product placement disparities based on race and national origin;[86] (iii) providing financial incentives and encouraging loan officers and others responsible for mortgage lending to issue loans that are costlier than better loans for which the borrowers qualify and loans that the borrowers could not afford;[87] (iv) abandoning a meaningful underwriting review;[88] and (v) denying equal credit to minority neighborhoods in Los Angeles (including the refusal to refinance or modify predatory loans), *i.e.*, redlining.[89]

The City's statistical analyses thoroughly detail the significant disparate impact on African-American and Latino borrowers as compared to white borrowers.[90]  For example, the City's statistical analyses indicate that 14.7% of loans made by BoA to African-American and Latino customers in Los Angeles were high-

---

[84] MTD at 21.

[85] ¶¶ 7, 11, 12, 91, 95, 101-116, 156, 161.

[86] ¶¶12, 53-75, 117-122, 127-29, 161, 199.

[87] ¶¶ 12, 53-75, 94, 98, 100-01, 117-122, 199.

[88] ¶¶ 11, 74, 75, 100, 110-126, 159, 163.

[89] ¶¶ 4, 8, 10, 96, 110, 127-139, 156.

[90] ¶¶ 143-171, 199.

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
Case No.: 2:13cv-09046-PA(AGRx)

cost while only 4.2% of the loans made to white customers were high-cost;[91] a borrower in a predominantly minority census tract was 1.676 times more likely to receive a predatory loan as was a borrower with similar credit characteristics in a predominantly white neighborhood;[92] and a loan from BoA in a predominantly African-American or Latino neighborhood was 4.184 times more likely to result in foreclosure as it was in a predominantly white neighborhood.[93]  District courts have deemed similar – but far less comprehensive – allegations of disparate impact to be sufficient.[94]  In short, the City sufficiently alleges disparate impact under FHA.

### c.      The City adequately alleges a causal connection.

The City alleges that the challenged practices resulted in a significant adverse effect on minorities.  According to the Complaint, the challenged practices (*i.e.*, reverse redlining, redlining, unmonitored discretion, financial incentives, and loose underwriting) have caused African-Americans and Latinos in Los Angeles to receive materially less favorable mortgage loans than loans given to similarly situated whites; the predictable result of these lending practices was a materially greater number of foreclosures at specific properties with specific costs for the City.[95] Despite BoA's attack on the sufficiency of the statistical evidence, the City undeniably alleges facts showing that African-American and Latino borrowers were more likely to receive predatory loans from BoA as were white borrowers, even after controlling for key borrower characteristics that include the credit history, loan-to-

---

[91] ¶ 144.

[92] ¶ 153.

[93] ¶¶ 9, 159.  The City's statistical analyses are largely based on BoA's own loan data, made available through public databases.  ¶¶ 13, 143-46, 151-55.  The City also presents the results of studies and reports from the Center for Responsible Lending and California Reinvestment Coalition, which further support the alleged disparate impact.  ¶¶ 18, 79, 83-90, 148-49.

[94] *See NAACP*, 635 F. Supp. 2d at 1104; *see also Taylor*, 580 F. Supp. 2d at 1069 ("Construing all inferences in Plaintiff's favor, the Court finds Plaintiff sufficiently alleges Defendant's policy resulted in a disproportionately adverse impact on African Americans as compared to Caucasians").

[95] ¶¶ 2, 9-10. 12, 20, 47, 53, 60, 74, 161, 165-171, 199, 205.

value ratio, and loan-to-income ratio.[96]  In other words, the City sufficiently alleges that minority borrowers received costlier loans because of their race or national origin, and not because of legitimate underwriting criteria.[97]

### 2.    The City Properly States a Claim for Intentional Discrimination.

"[A] plaintiff makes out a prima facie case of intentional discrimination under the FHA merely by showing that a protected group has been subjected to explicitly differential – *i.e.*, discriminatory – treatment."[98]  Factual allegations showing that BoA targeted minorities based on race or national origin will suffice to state a discriminatory motive.[99]

Here, the Complaint includes ample factual allegations that BoA targeted African-American and Latino borrowers for unfair loan terms on the basis of their race or national origin.[100]  For example, based on statements from several confidential witnesses, the City alleges that: (i) BoA pressured loan salespeople to reach out to depressed minority neighborhoods in Los Angeles and to target minority groups with subprime loans (setting up kiosks at predominantly African-American churches, etc.), without adequately monitoring the lending practices;[101] (ii) BoA pushed underwriters to approve predatory loans for minority applicants and altered underwriting criteria for minority applicants;[102] (iii) BoA sought to market predatory

---

[96] *See, e.g.,* ¶¶ 13, 151; *see also* ¶¶ 81-82, 148.

[97] *See NAACP*, 635 F. Supp. 2d at 1104; *see also City of Memphis,* 2011 WL 1706756, at *14 (finding statistical allegations were sufficient to illustrate that the bank's policies had a disproportionate impact on the minorities in the total group to which the policies were applied).

[98] *Pack v. Fort Wash. II*, 689 F. Supp. 2d 1237, 1243 (E.D. Cal. 2009).

[99] *See Diaz v. Bank of Am. Home Loan Servicing*, No. CV 09-9286 PSG (MANX), 2010 WL 5313417, at *4-5 (C.D. Cal., Dec. 16, 2010). For example, a plaintiff can allege discriminatory intent by pleading that minorities were targeted because they would be less likely to question the proposed loan terms or fully understand the risks or representations made by the lender.  *See id.*

[100] ¶¶11-12, 91-142, 198.

[101] ¶¶ 12, 95, 102-107, 117, 135. One former employee recalled thinking: "I don't like that they're always trying to push us as black people into neighborhoods to deal with low-income blacks."  ¶ 104.

[102] ¶¶ 12, 100, 115, 121, 124.

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
Case No.: 2:13cv-09046-PA(AGRx)

loans to people perceived to have less education or a limited understanding of mortgages, including minorities;[103] and (iv) there were lending irregularities signifying that BoA took advantage of minority borrowers.[104]  These are precisely the sort of allegations missing from the cases cited by BoA.[105]

BoA suggests that the City may not support violation of FHA by alleging facts showing that BoA targeted depressed minority neighborhoods (presumably since some white borrowers may live in those neighborhoods).  Yet, as the Ninth Circuit recently underscored, the fact that a practice "also discriminates against individuals unprotected by the FHA does not eliminate a FHA violation."[106]  "A willingness to inflict collateral damage" on some white borrowers in order to make disadvantageous loans to minority borrowers "does not cleanse the taint of discrimination.... "[107]

In addition to factual allegations regarding the targeting of minorities, statistical evidence can be used to show disparate treatment.[108]  In this case, the City pleads a wealth of statistical results (discussed above) showing that the challenged practices create a sizeable differential impact on minority communities, and the impact is not explained by the borrowers' risk characteristics.  The discriminatory pattern supports a discriminatory motive.  In short, the City sufficiently alleges intentional discrimination under FHA.

---

[103] ¶¶ 101, 121.

[104] ¶¶ 12, 92, 131.

[105] *See, e.g., House v. Cal State Mortg. Co.*, No. CV-F-08-1880 OWW- GSA, 2009 WL 2031775, at *20 (E.D. Cal., July 9, 2009) (no factual allegations that defendants targeted plaintiff or others for unfair loans on the basis of disability, *e.g.*, defendants were not alleged to have contacted Plaintiff or others with disabilities in order to make the loans).

[106] *Pacific Shores Props., LLC v. City of Newport Beach*, 730 F. 3d 1142, 1160 (9th Cir. 2013).

[107] *See id.* at 1160-61.

[108] *See id.* at 1158-59; *see also Lowe v. City of Monrovia,* 775 F. 2d 998, 1008 (9th Cir. 1985) ("a discriminatory pattern is probative of motive").

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
Case No.: 2:13cv-09046-PA(AGRx)

**3.      The City's Redlining Allegations Are Sufficient.**

BoA initially argues that the City's FHA claim is "*only* premised on reverse redlining by *Countrywide*," such that Bank of America's discriminatory lending would not save the FHA claim from dismissal.[109]  BoA's argument, however, grossly mischaracterizes the FHA claim.  Throughout the Complaint, the City alleges that the Bank of America Defendants engaged in a continuing pattern and practice of reverse redlining by making predatory mortgage loans to minority borrowers over the course of at least eight years (from 2004-2011).[110]  The City also alleges that the Bank of America Defendants declined to refinance or modify the terms of such loans after tightening their extension of credit.[111]  The mortgage data reflecting a discriminatory lending pattern comes from the Bank of America Defendants; *it is not limited to CountryWide loan data*.[112]  In other words, the FHA claim rests both implicitly and explicitly on discriminatory lending by the Bank of America Defendants (as well as CountryWide).

Next, in BoA's view, the Complaint merely alleges that BoA curtailed credit to borrowers "irrespective of race," in which case any redlining would not support a disparate treatment claim.[113]  Once again, however, BoA mischaracterizes the pleadings.  According to the Complaint, BoA refused to extend mortgage credit to minority borrowers in Los Angeles on equal terms as offered to nonminority borrowers.[114]  Minority borrowers sought to refinance or modify predatory loans that BoA previously made to them, only to find that BoA refused to extend credit at all, or on terms equal to those offered when refinancing loans issued to white

---

[109] MTD at 23-25.

[110] ¶¶ 2-9, 31, 35, 95, 102-108, 198-205.

[111] ¶¶ 4, 8, 10, 110, 127-139, 156.

[112] ¶¶ 143-146, 150-171.

[113] MTD at 24.

[114] ¶¶ 4, 8.

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
Case No.: 2:13cv-09046-PA(AGRx)

1   borrowers.[115]  Moreover, minority applicants were wrongly told that they could

2   refinance at a later date, when in fact, there was little chance that BoA would offer

3   such refinancing.[116]  As a result, the ratio of minorities who were being approved for

4   such loans dropped dramatically once BoA tightened its credit standards.[117]

5           BoA cannot de-couple its targeting of minorities for predatory loans from the

6   refusal to refinance or modify such loans.  Just as the targeting of minority borrowers

7   for predatory loans points to a discriminatory motive, so too the refusal to refinance

8   or modify such loans points to a discriminatory motive.  Therefore, BoA's redlining

9   allegations support a disparate treatment claim.

10          For similar reasons, the City's redlining allegations fully support its disparate

11  impact claim.  The City specifically alleges that BoA made predatory loans to

12  minority borrowers on loose credit terms,[118] and then declined to refinance or modify

13  the terms of those predatory loans after tightening credit standards.[119]  This caused a

14  disproportionate adverse effect on minorities as compared to whites with similar

15  credit risk characteristics, and as shown by the City's detailed statistical analyses.[120]

16  Simply put, BoA's redlining activities can and do support the City's disparate impact

17  claim under FHA.

18  **D.      The City Properly States a Claim for Restitution.**

19          While California courts disagree as to whether a claim for restitution based on

20  unjust enrichment exists as a separate cause of action,[121] the Ninth Circuit[122] and

21

22      [115] ¶¶ 10, 130.

23      [116] ¶¶ 131, 135, 138.

24      [117] ¶ 136.

        [118] ¶¶ 7, 11-12, 53-75, 91, 94-95, 98, 100-126, 159, 161, 163, 199.

25      [119] ¶¶ 4, 8, 10, 96, 110, 127-139, 156.

26      [120] ¶¶ 9, 13, 143-171, 199.

27      [121] *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2011 WL 4345435, at
    *3 (N.D. Cal. Sept. 15, 2011) (noting disagreement but denying motion to dismiss unjust
28  enrichment claim), citing *Ghirardo v. Antonioli*, 14 Cal. 4th 39, 50, 57 Cal. Rptr. 2d 687 (1996)

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
Case No.: 2:13cv-09046-PA-(AGRx)

district courts therein[123] have found California to permit such a claim.  For example, just recently in *Berger v. Home Depot USA*, the Ninth Circuit analyzed it as an independent cause of action and explained that the "elements of unjust enrichment are receipt of a benefit and unjust retention of the benefit at the expense of another."[124]  In the Complaint, the City alleges just that.[125]

Because the City alleges it has conferred a benefit on BoA by paying for its "externalities, or the costs of harm caused by its mortgage lending discrimination," the City has adequately alleged a claim for restitution.  For example, in *White v. Smith & Wesson*,[126] the mayor and city of Cleveland brought a lawsuit against gun manufacturers and dealers asserting, *inter alia*, unjust enrichment claims.  The district court explained that, as under California law,[127] unjust enrichment occurs where one party confers a benefit by "sav[ing] the other from expense or loss."[128]  And the court found this allegation satisfied where the city "ha[d] paid for what may

---

(stating that party was "entitled to seek relief under traditional equitable principles of unjust enrichment").

[122] *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F. 3d 1168, 1175 (9th Cir. 2010) (affirming class certification of unjust enrichment claim under California law); *Ben & Jerry's Franchising, Inc. v. Porghavami*, 418 F. App'x 607, 608 (9th Cir. 2011) (affirming grant of summary judgment to plaintiff on unjust enrichment claim under California law); *Zanze v. Snelling Servs., LLC*, 412 F. App'x 994, 997 (9th Cir. 2011) (reversing dismissal of unjust enrichment claim under California law); *Mazza v. American Honda Motor Co.*, 666 F.3d 581, 587 (9th Cir. 2012) (performing conflict of law analysis with respect to unjust enrichment claim brought under California law); *Ohno v. Yasuma*, 723 F. 3d 984, 1006 n. 25 (9th Cir. 2013) ("The Supreme Court of California and California Courts of Appeal have recognized actions for relief under the equitable doctrine of unjust enrichment.").  Indeed, after asserting that "there is no independent cause of action for 'restitution,'" BoA cites a case from the Ninth Circuit acknowledging that there is a "claim for the equitable remedy of restitution" where defendants have money or property that belongs to the plaintiff. *Walker v. Geico Gen. Ins. Co.*, 558 F. 3d 1025, 1027 (9th Cir. 2009).

[123] *In re EasySaver Rewards Litig.*, 737 F. Supp. 2d 1159, 1180 (S.D. Cal. 2010) ("California courts permit a plaintiff to invoke the doctrine of unjust enrichment."); *Keilholtz v. Superior Fireplace Co.*, No. C 08-00836 CW, 2009 WL 839076, at *5 (N.D. Cal. Mar. 30, 2009).

[124] No. 11-55592, 2014 WL 350082, at *6 (9th Cir. Feb. 3, 2014).

[125] ¶¶ 207-08.

[126] 97 F. Supp. 2d 816 (N.D. Ohio 2000) ("*City of Cleveland*").

[127] *Dinosaur Dev., Inc., v. White*, 216 Cal. App. 3d 1310, 1315, 265 Cal. Rptr. 525, 527 (Cal. Ct. App. 1989) (explaining that restitution "include[s] not only the restoration or giving back of something to its rightful owner, but also compensation, reimbursement, indemnification, or reparation for benefits derived from, or for loss or injury caused to, another").

[128] *City of Cleveland*, 97 F. Supp. 2d at 829.

- 24 -

be called the Defendants' externalities – the costs of the harm caused by Defendants' failure to incorporate safety devices into their handguns and negligent marketing practices."[129]  Other courts have also permitted a city to proceed on this theory of unjust enrichment.[130]

Lastly, BoA's assertion that the claim also fails because the City has an adequate remedy at law "under the provisions of the Municipal Code,"[131] is too vague to address substantively, but, in any event, the City is "permitted to seek alternative remedies in [its] complaint."[132]

## IV.   CONCLUSION

For these reasons, the City respectfully requests the Court to deny BoA's motion to dismiss.

Respectfully submitted,

DATED:      March 21, 2014          HAGENS BERMAN SOBOL SHAPIRO LLP

By: /s/ Elaine T. Byszewski
Elaine T. Byszewski (SBN 222304)
*elaine@hbsslaw.com*
Lee M. Gordon (SBN 174168)
*lee@hbsslaw.com*
301 N. Lake Ave., Ste. 203
Pasadena, CA  91101
Telephone:  (213) 330-7150

---

[129] *Id.* at 829.

[130] *See, e.g., City of Boston v. Smith & Wesson Corp.,* No. 199902590, 2000 WL 1473568 at *18 (Mass. Super., July 13, 2000) (permitting city to maintain unjust enrichment claim where it alleged it conferred benefit on defendants by paying for the costs of harm caused by defendants' misconduct); *City of N.Y. v. Lead Indus. Ass'n, Inc.,* 190 A.D. 2d 173, 177, 597 N.Y.S. 2d 698, 700 (N.Y. App. Div. May 13, 1993) (denying motion to dismiss unjust enrichment claim where city sought restitution for costs of lead abatement and treatment of individuals with lead poisoning).

[131] MTD at 25.

[132] *In re EasySaver,* 737 F. Supp. 2d at 1180; *see also Keilholtz,* 2009 WL 839076, at *5 ("[I]t is inappropriate at this early stage in the litigation to determine whether other remedies available to Plaintiffs are adequate."); *Mauro v. General Motors Corp.,* No. CIV. S-07-892 FCD GGH, 2008 WL 2775004, at *6 (E.D. Cal. July 15, 2008).

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
Case No.: 2:13cv-09046-PA(AGRx)

Michael N. Feuer (SBN 111529)
*mike.feuer@lacity.org*
CITY ATTORNEY
200 N. Main St., Rm. 800
Los Angeles, CA 90012
Phone: (213) 978-8100

Joel Liberson (SBN 164857)
*joel@taresources.com*
Howard Liberson (SBN 183269)
*howard@taresources.com*
TRIAL & APPELLATE RESOURCES, P.C.
400 Continental Blvd., 6th Fl.
El Segundo, CA  90245
Telephone:  (310) 426-2361

Robert Peck (*Pro Hac Vice*)
*robert.peck@cclfirm.com*
CENTER FOR CONSTITUTIONAL
LITIGATION
777 6th St. NW, Ste. 520
Washington, DC  20001
Telephone:  (202) 944-2803

Clifton Albright (SBN 100020)
*clifton.albright@ayslaw.com*
ALBRIGHT YEE & SCHMIT
888 W. 6th St., Ste. 1400
Los Angeles, CA  90017
Telephone: (213) 833-1700

*Attorneys for Plaintiff the City of Los Angeles*

- 26 -

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on March 21, 2014, I electronically filed the foregoing document using the CM/ECF system which will send notification of such filing to the e-mail addresses registered in the CM/ECF system, as denoted on the Electronic Mail Notice List.

_____
/s/ Elaine T. Byszewski
Elaine T. Byszewski

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
Case No.: 2:13cv-09046-PA(AGRx)