MICHAEL N. FEUER (SBN 111529)
CITY ATTORNEY
*mike.feuer@lacity.org*
JAMES P. CLARK (SBN 64780)
CHIEF DEPUTY CITY ATTORNEY
*james.p.clark@lacity.org*
CITY OF LOS ANGELES
200 N. Main Street, Room 800
Los Angeles, CA 90012
Telephone: (213) 978-8100

STEVE W. BERMAN
*steve@hbsslaw.com*
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 8th Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292

ELAINE T. BYSZEWSKI (SBN 222304)
*elaine@hbsslaw.com*
LEE M. GORDON (SBN 174168)
*lee@hbsslaw.com*
HAGENS BERMAN SOBOL SHAPIRO LLP
301 North Lake Avenue, Suite 203
Pasadena, CA 91101
Telephone: (213) 330-7150

[Additional Counsel Listed on Signature Page]

*Attorneys for Plaintiff the City of Los Angeles*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| CITY OF LOS ANGELES, a municipal corporation,<br><br>Plaintiff,<br><br>v.<br><br>BANK OF AMERICA CORPORATION; BANK OF AMERICA, N.A.; COUNTRYWIDE FINANCIAL CORPORATION; COUNTRYWIDE HOME LOANS; and COUNTRYWIDE BANK, FSB,<br><br>Defendants. | No. 2:13cv-09046-PA(AGRx)<br><br>**PLAINTIFF'S RESPONSES TO DEFENDANTS' EVIDENTIARY OBJECTIONS**<br><br>Date: May 11, 2015, 1:30pm<br>Courtroom: 15<br>Judge: Hon. Percy Anderson<br>Complaint filed: December 6, 2013. |

Plaintiff submits this response to Defendants' evidentiary objections. As Defendants responded to the City's evidentiary objections with their reply papers, *see* ECF No. 102-2, the City provides its response now to the evidentiary objections asserted by Defendants on April 27, 2015. *See* ECF No. 102-3.

**DEFENDANTS' OBJECTIONS TO EVIDENCE**

171. Objection as irrelevant because how Bank of America Corporation accounted for FHA loans on its annual balance sheet and whether it incurred a principal loss if a borrower defaulted on an FHA loan has no relevance to the City's Opposition, which only relies on a disparate impact claim under the Fair Housing Act, and not a disparate treatment claim. Loan losses and balance sheets have no bearing on the merits of the City's disparate impact claim.

Fed. R. Evid. 401, 403.

**PLAINTIFF'S RESPONSE:**

This evidence is relevant to put BoA's lending activity in appropriate context in response to its suggestion that it is merely providing a benefit to the community in issuing these loans.

186. Objection as an improper opinion. The City's statement that UFMIP and MIP rates were "much lower in 2007" and "increased substantially in the present" is a characterization of the evidence, and not a statement of fact. Moreover, the characterization is misleading as UFMIP only rose .25% and MIPonly rose .1% from 2007 to the present.

Fed. R. Evid. 701, 403.

**PLAINTIFF'S RESPONSE:**

BoA's assertion that it is misleading to state that the UFMIP and MIP increased substantially ignores the effect that such increases have over the life of a loan.

198. Objection as an improper opinion. The City's statement that loan volume is the "most critical component for retail loan officers" is an opinion, and not a statement of fact.

Fed. R. Evid. 701.

**PLAINTIFF'S RESPONSE:**

BoA improperly objects as opinion to what is essentially the opinion of its own 30(b)(6) deponent.

202. Objection as irrelevant. The City's reliance on the conclusions set forth in the "Paying More for the American Dream VI" report is not relevant here as that report concerns geographic areas outside the City of Los Angeles, lenders other than Defendants, and the data concerning loans originated outside the statutory period (2010 mortgage lending data). To the extent the evidence has any relevance at all, it is properly excluded as unfairly prejudicial and misleading.

Fed. R. Evid. 401, 403.

**PLAINTIFF'S RESPONSE:**

The City relies on conclusions set forth in the "Paying More for the American Dream VI" report as relevant to show that BoA was, or should have been, on notice of a potential disparate impact being created by its lending policies. BoA's argument that it concerns geographic areas outside of Los Angeles is misleading. While the report examines seven metropolitan areas, one of those areas is Los Angeles and the report draws conclusions specific to Los Angeles. Therefore, the report is not irrelevant, unfairly prejudicial, or misleading.

204. Objection as an improper opinion because it is a conclusion on the adequacy of Defendants' management policies, and not a true statement of fact. Further objection as misleading and confusing, with no real probative value, as the

phrase "failed to appropriately monitor relevant data" is vague and ambiguous and its conclusion of inadequate monitoring relies on circular reasoning.

Fed. R. Evid. 701, 703, 401, 403.

**PLAINTIFF'S RESPONSE:**

That BoA's risk management policies failed to appropriately monitor relevant data to identify and correct the disproportionate issuance of more expensive FHA/VA loans to minority borrowers that occurred here is a plain statement of fact – not an improper opinion. Moreover, BoA does not explain how the statement is vague and ambiguous or its reasoning circular. Its objections should be overruled.

214. Objection as irrelevant because the evidence relied on by the City includes streamline refinance loans, which are not factually capable of being included in a disparate impact steering analysis. In the 55 FHA/VA loans originated to African American borrowers identified by Professor Ayres, 34 were FHA streamline refinance loans.[1]

Fed. R. Evid. 401, 403.

**PLAINTIFF'S RESPONSE:**

BoA provides no basis for its meritless assertion that streamline refinance loans are not factually capable of being included in a disparate impact analysis. In fact, streamline refinance borrowers with similar credit scores, assets, loan amounts, and other characteristics for which the City controlled are similarly situated to other borrowers. Moreover, BoA also had a "Fastrack" refinance loan program for conventional loans. Further, just because a streamline FHA refinance may provide a net tangible benefit to the borrower relative to the borrower's existing FHA loan

[1] The City and its expert, Ian Ayres, assert the relevant time period for the analysis is December 6, 2011 through December 6, 2013 so that period is adopted here. The City has data for a larger time period, December 6, 2011 through August 31, 2014. During that time period, there were 59 FHA/VA loans originated to African Americans, of which 36were FHA streamline refinances.

does not mean that a streamline refinance would provide a net tangible benefit relative to a conventional loan the borrower may have been eligible for.

216. Objection as irrelevant because the evidence relied on by the City includes streamline refinance loans, which are not factually capable of being included in a disparate impact steering analysis. In the 55 FHA/VA loans originated to African American borrowers identified by Professor Ayres, 34 were FHA streamline refinance loans. *See* n.1.

Fed. R. Evid. 401, 403.

**PLAINTIFF'S RESPONSE:**

BoA provides no basis for its meritless assertion that streamline refinance loans are not factually capable of being included in a disparate impact analysis. In fact, streamline refinance borrowers with similar credit scores, assets, loan amounts, and other characteristics for which the City controlled are similarly situated to other borrowers. Moreover, BoA also had a "Fastrack" refinance loan program for conventional loans. Further, just because a streamline FHA refinance may provide a net tangible benefit to the borrower relative to the borrower's existing FHA loan does not mean that a streamline refinance would provide a net tangible benefit relative to a conventional loan the borrower may have been eligible for.

217. Objection as irrelevant because the evidence relied on by the City includes streamline refinance loans, which are not factually capable of being included in a disparate impact steering analysis. In the 55 FHA/VA loans originated to African American borrowers identified by Professor Ayres, 34 were FHA streamline refinance loans. *See* n.1.

Fed. R. Evid. 401, 403.

**PLAINTIFF'S RESPONSE:**

BoA provides no basis for its meritless assertion that streamline refinance loans are not factually capable of being included in a disparate impact analysis. In fact, streamline refinance borrowers with similar credit scores, assets, loan amounts, and other characteristics for which the City controlled are similarly situated to other borrowers. Moreover, BoA also had a "Fastrack" refinance loan program for conventional loans. Further, just because a streamline FHA refinance may provide a net tangible benefit to the borrower relative to the borrower's existing FHA loan does not mean that a streamline refinance would provide a net tangible benefit relative to a conventional loan the borrower may have been eligible for.

218. Objection as irrelevant because the evidence relied on by the City includes streamline refinance loans, which are not factually capable of being included in a disparate impact steering analysis. In the 55 FHA/VA loans originated to African American borrowers identified by Professor Ayres, 34 were FHA streamline refinance loans. *See* n.1.

Fed. R. Evid. 401, 403

**PLAINTIFF'S RESPONSE:**

BoA provides no basis for its meritless assertion that streamline refinance loans are not factually capable of being included in a disparate impact analysis. In fact, streamline refinance borrowers with similar credit scores, assets, loan amounts, and other characteristics for which the City controlled are similarly situated to other borrowers. Moreover, BoA also had a "Fastrack" refinance loan program for conventional loans. Further, just because a streamline FHA refinance may provide a net tangible benefit to the borrower relative to the borrower's existing FHA loan does not mean that a streamline refinance would provide a net tangible benefit relative to a conventional loan the borrower may have been eligible for.

219. Objection as an improper legal conclusion – the statement opines on whether summary judgment is appropriate, and is not a statement of fact. Further objection as irrelevant because the evidence relied on by the City includes streamline refinance loans, which are not factually capable of being included in a disparate impact steering analysis. In the 55 FHA/VA loans originated to African American borrowers identified by Professor Ayres, 34 were FHA streamline refinance loans. *See* n.1.

Fed. R. Evid. 701, 703, 401, 403.

**PLAINTIFF'S RESPONSE:**

BoA provides no basis for its meritless assertion that streamline refinance loans are not factually capable of being included in a disparate impact analysis. In fact, streamline refinance borrowers with similar credit scores, assets, loan amounts, and other characteristics for which the City controlled are similarly situated to other borrowers. Moreover, BoA also had a "Fastrack" refinance loan program for conventional loans. Further, just because a streamline FHA refinance may provide a net tangible benefit to the borrower relative to the borrower's existing FHA loan does not mean that a streamline refinance would provide a net tangible benefit relative to a conventional loan the borrower may have been eligible for.

223. Objection as an improper conclusion as the City's characterization that "I/O loans carry so much risk" is a conclusion, and not a fact.

Fed. R. Evid. 701.

**PLAINTIFF'S RESPONSE:**

BoA's objection to these six words ignores the overall factual statement in which they are embedded.

225. Objection as irrelevant. The City's statement concerning BANA's partnership with NACA is irrelevant as the City fails to establish that any loan originated by BANA in the statutory period was originated in partnership with NACA, and indeed the evidence is to the contrary. To the extent the City's statement has relevance at all, it is properly excluded as misleading and confusing for the reasons described above.

Fed. R. Civ. P. 401, 403.

**PLAINTIFF'S RESPONSE:**

BoA was the one to raise in its moving papers that it originated high cost loans in conjunction with the Neighborhood Assistance Corporation of America (NACA). *See* SUF 11, 90. It is unfair for it to assert for the first time in reply that it has now reviewed the 12,599 loans issued during the relevant period and none were issued by NACA. *See* Ex. 8 to Sheldon Decl. at ¶¶ 5-6.

226. Objection as irrelevant. The City's reliance on the conclusions set forth by HUD in 2008 is not relevant here as those statements concern loans originated outside the statutory period (in 2004 through 2006), geographic areas outside the City of Los Angeles, and lenders other than Defendants.

Fed. R. Evid. 401, 403.

**PLAINTIFF'S RESPONSE:**

The City's reliance on conclusions set forth by HUD are relevant to show that BoA was, or should have been, long on notice of a potential disparate impact being created by its lending policies. BoA's assertion that it concerns geographic areas outside of Los Angeles and lenders other than Defendants is misleading because the nationwide analysis is inclusive of Los Angeles and BoA.

227. Objection as an improper opinion because it is a conclusion on the adequacy of Defendants' management policies, and not a true statement of fact. Further objection as misleading and confusing, with no real probative value, as the phrase "failed to appropriately monitor relevant data" is vague and ambiguous and its conclusion of inadequate monitoring relies on circular reasoning.

Fed. R. Evid. 701, 703, 401, 403.

**PLAINTIFF'S RESPONSE:**

That BoA's risk management policies failed to appropriately monitor relevant data to identify and correct the disproportionate issuance of more expensive FHA/VA loans to minority borrowers that occurred here is a plain statement of fact – not an improper opinion. Moreover, BoA does not explain how the statement is vague and ambiguous or its reasoning circular. Its objections should be overruled.

232. Objection as irrelevant because the evidence relied on by the City includes non-owner occupied properties and streamline and Fastrack refinances, which are not factually capable of being included in a disparate impact steering analysis. In the 46 High-Cost loans originated to Hispanic borrowers identified by Professor Ayres, 35 were non-owner occupied properties and 34 were streamline or Fastrack refinances. 2 The statement is also properly excluded as misleading because Professor Ayres' analysis combines High-Cost and I/O loans without any basis to do so.

Fed. R. Evid. 401, 403.

**PLAINTIFF'S RESPONSE:**

BoA provides no basis for its meritless assertion that streamline refinance loans are not factually capable of being included in a disparate impact analysis. In fact, streamline refinance borrowers with similar credit scores, assets, loan amounts, and other characteristics for which the City controlled are similarly situated to other

borrowers. Moreover, BoA also had a "Fastrack" refinance loan program for conventional loans. Further, just because a streamline FHA refinance may provide a net tangible benefit to the borrower relative to the borrower's existing FHA loan does not mean that a streamline refinance would provide a net tangible benefit relative to a conventional loan the borrower may have been eligible for.

BoA ignores authority rejecting the argument that the purview of the FHA is limited to owner occupied properties. *See Hargraves v. Capital City Mortg. Corp*., 140 F. Supp. 2d 7, 20 (D.D.C. 2000). *Hargraves* rejected this argument because "courts have allowed FHA suits brought by testers, fair housing organizations, and others who do not intend to live in the properties. *See, e.g., Havens,* 455 U.S. 363, 102 S.Ct. 1114, 71 L.Ed.2d 214 (fair housing organization and testers)." 140 F. Supp. 2d at 22. And the court further explained that "on its face, the Act does not require plaintiffs to reside in the dwellings or residential real estate." *Id*.

BoA also provides no basis for its assertion that it is improper to analyze all loans identified as predatory, including High-Cost and I/O, in a combined data set.

234. Objection as irrelevant because the evidence relied on by the City includes non-owner occupied properties and streamline and Fastrack refinances, which are not factually capable of being included in a disparate impact steering analysis. In the 46 High-Cost loans originated to Hispanic borrowers identified by Professor Ayres, 35 were non-owner occupied properties and 34 were streamline or Fastrack refinances. *See* n. 2. The statement is also properly excluded as misleading because Professor Ayres' analysis combines High-Cost and I/O loans without any basis to do so.

Fed. R. Evid. 401, 403.

**PLAINTIFF'S RESPONSE:**

BoA provides no basis for its meritless assertion that streamline refinance loans are not factually capable of being included in a disparate impact analysis. In fact, streamline refinance borrowers with similar credit scores, assets, loan amounts, and other characteristics for which the City controlled are similarly situated to other borrowers. Moreover, BoA also had a "Fastrack" refinance loan program for conventional loans. Further, just because a streamline FHA refinance may provide a net tangible benefit to the borrower relative to the borrower's existing FHA loan does not mean that a streamline refinance would provide a net tangible benefit relative to a conventional loan the borrower may have been eligible for.

BoA ignores authority rejecting the argument that the purview of the FHA is limited to owner occupied properties. *See Hargraves v. Capital City Mortg. Corp*., 140 F. Supp. 2d 7, 20 (D.D.C. 2000). *Hargraves* rejected this argument because "courts have allowed FHA suits brought by testers, fair housing organizations, and others who do not intend to live in the properties. *See, e.g., Havens,* 455 U.S. 363, 102 S.Ct. 1114, 71 L.Ed.2d 214 (fair housing organization and testers)." 140 F. Supp. 2d at 22. And the court further explained that "on its face, the Act does not require plaintiffs to reside in the dwellings or residential real estate." *Id*.

BoA also provides no basis for its assertion that it is improper to analyze all loans identified as predatory, including High-Cost and I/O, in a combined data set.

235. Objection as irrelevant because the evidence relied on by the City includes streamline refinances and Fastrack refinances, which are not factually capable of being included in a disparate impact steering analysis. In the 46 High-Cost loans originated to Hispanic borrowers identified by Professor Ayres, 34 were streamline or Fastrack refinances. *See* n. 2. The statement is also properly excluded as misleading because Professor Ayres' analysis combines High-Cost and I/O loans without any basis to do so.

Fed. R. Evid. 401, 403.

**PLAINTIFF'S RESPONSE:**

BoA provides no basis for its meritless assertion that streamline refinance loans are not factually capable of being included in a disparate impact analysis. In fact, streamline refinance borrowers with similar credit scores, assets, loan amounts, and other characteristics for which the City controlled are similarly situated to other borrowers. Moreover, BoA also had a "Fastrack" refinance loan program for conventional loans. Further, just because a streamline FHA refinance may provide a net tangible benefit to the borrower relative to the borrower's existing FHA loan does not mean that a streamline refinance would provide a net tangible benefit relative to a conventional loan the borrower may have been eligible for. BoA also provides no basis for its assertion that it is improper to analyze all loans identified as predatory, including High-Cost and I/O, in a combined data set.

236. Objection as irrelevant because the evidence relied on by the City includes non-owner occupied properties and streamline and Fastrack refinances, which are not factually capable of being included in a disparate impact steering analysis. In the 46 High-Cost loans originated to Hispanic borrowers identified by Professor Ayres, 35 were non-owner occupied properties and 34 were streamline or Fastrack refinances. *See* n. 2. The statement is also properly excluded as misleading because Professor Ayres' analysis combines High-Cost and I/O loans without any basis to do so.

Fed. R. Evid. 401, 403.

**PLAINTIFF'S RESPONSE:**

BoA provides no basis for its meritless assertion that streamline refinance loans are not factually capable of being included in a disparate impact analysis. In fact, streamline refinance borrowers with similar credit scores, assets, loan amounts,

and other characteristics for which the City controlled are similarly situated to other borrowers. Moreover, BoA also had a "Fastrack" refinance loan program for conventional loans. Further, just because a streamline FHA refinance may provide a net tangible benefit to the borrower relative to the borrower's existing FHA loan does not mean that a streamline refinance would provide a net tangible benefit relative to a conventional loan the borrower may have been eligible for.

BoA ignores authority rejecting the argument that the purview of the FHA is limited to owner occupied properties. *See Hargraves v. Capital City Mortg. Corp.*, 140 F. Supp. 2d 7, 20 (D.D.C. 2000). *Hargraves* rejected this argument because "courts have allowed FHA suits brought by testers, fair housing organizations, and others who do not intend to live in the properties. *See, e.g., Havens,* 455 U.S. 363, 102 S.Ct. 1114, 71 L.Ed.2d 214 (fair housing organization and testers)." 140 F. Supp. 2d at 22. And the court further explained that "on its face, the Act does not require plaintiffs to reside in the dwellings or residential real estate." *Id*.

BoA also provides no basis for its assertion that it is improper to analyze all loans identified as predatory, including High-Cost and I/O, in a combined data set.

237. Objection as irrelevant because the evidence relied on by the City includes non-owner occupied properties and streamline and Fastrack refinances, which are not factually capable of being included in a disparate impact steering analysis. In the 46 High-Cost loans originated to Hispanic borrowers identified by Professor Ayres, 35 were non-owner occupied properties and 34 were streamline or Fastrack refinances. *See* n. 2. The statement is also properly excluded as misleading because Professor Ayres' analysis combines High-Cost and I/O loans without any basis to do so.

Fed. R. Evid. 401, 403.

**PLAINTIFF'S RESPONSE:**

BoA provides no basis for its meritless assertion that streamline refinance loans are not factually capable of being included in a disparate impact analysis. In fact, streamline refinance borrowers with similar credit scores, assets, loan amounts, and other characteristics for which the City controlled are similarly situated to other borrowers. Moreover, BoA also had a "Fastrack" refinance loan program for conventional loans. Further, just because a streamline FHA refinance may provide a net tangible benefit to the borrower relative to the borrower's existing FHA loan does not mean that a streamline refinance would provide a net tangible benefit relative to a conventional loan the borrower may have been eligible for.

BoA ignores authority rejecting the argument that the purview of the FHA is limited to owner occupied properties. *See Hargraves v. Capital City Mortg. Corp.*, 140 F. Supp. 2d 7, 20 (D.D.C. 2000). *Hargraves* rejected this argument because "courts have allowed FHA suits brought by testers, fair housing organizations, and others who do not intend to live in the properties. *See, e.g., Havens,* 455 U.S. 363, 102 S.Ct. 1114, 71 L.Ed.2d 214 (fair housing organization and testers)." 140 F. Supp. 2d at 22. And the court further explained that "on its face, the Act does not require plaintiffs to reside in the dwellings or residential real estate." *Id*.

BoA also provides no basis for its assertion that it is improper to analyze all loans identified as predatory, including High-Cost and I/O, in a combined data set.

238. Objection as an improper conclusion of law, rather than a factual assertion. The statement that the City has an "interest" in its citizens being free from discrimination is only relevant to the extent that this "interest" is legally cognizable under the Fair Housing Act or Article III of the U.S. Constitution, which is a legal, not a factual issue.

Fed. R. Evid. 701, 401, 403.

**PLAINTIFF'S RESPONSE:**

BoA objects that this is actually a conclusion of law, ignoring that it had an entire section of conclusions of law in its separate statement.

In short, all of BoA's objections should be overruled.

* * * * *

Finally, the City also objects that argument contained in BoA's responses to the City's separate statement of facts, *see* ECF No. 102-1, violates this Court's Order, *see* ECF No. 65, which prohibits the inclusion of argument in a separate statement of facts. BoA makes such argument at RUF 172, 176-177, 184, 186, 188-189, 192-194, 198-201, 204, 213-214, 216-218, 223, 225, 227, 229, 232, 234-237, and the City respectfully requests that the Court strike it.

Respectfully submitted,

DATED: May 1, 2015

HAGENS BERMAN SOBOL SHAPIRO LLP

By: /s/ Elaine T. Byszewski

Elaine T. Byszewski (SBN 222304)
*elaine@hbsslaw.com*
Lee M. Gordon (SBN 174168)
*lee@hbsslaw.com*
Christopher R. Pitoun (SBN 290235)
*christopherp@hbsslaw.com*
HAGENS BERMAN SOBOL SHAPIRO LLP
301 N. Lake Ave., Ste. 203
Pasadena, CA 91101
Telephone: (213) 330-7150

Michael N. Feuer (SBN 111529)
City Attorney
*mike.feuer@lacity.org*
James P. Clark (SBN 64780)
Chief Deputy City Attorney
*james.p.clark@lacity.org*
CITY OF LOS ANGELES
200 N. Main St., Rm. 800
Los Angeles, CA 90012
Telephone: (213) 978-8100

Joel Liberson (SBN 164857)
*joel@taresources.com*
Howard Liberson (SBN 183269)
*howard@taresources.com*
TRIAL & APPELLATE RESOURCES, P.C.
400 Continental Blvd., 6th Fl.
El Segundo, CA 90245
Telephone: (310) 426-2361

Robert Peck (*pro hac vice*)
*robert.peck@cclfirm.com*
CENTER FOR CONSTITUTIONAL LITIGATION
777 6th St. NW, Ste. 520
Washington, DC 20001
Telephone: (202) 944-2803

Clifton Albright (SBN 100020)
*clifton.albright@ayslaw.com*
ALBRIGHT YEE & SCHMIT
888 W. 6th St., Ste. 1400
Los Angeles, CA 90017
Telephone: (213) 833-1700

*Attorneys for Plaintiff the City of Los Angeles*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 1, 2015, I electronically filed the foregoing document using the CM/ECF system which will send notification of such filing to the e-mail addresses registered in the CM/ECF system.

/s/ Erika Shaw
Erika Shaw